# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONYA N. YINGLING, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-15-72-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Tonya N. Yingling requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 7, 1986, and was twenty-seven years old at the time of the administrative hearing (Tr. 327). She has completed tenth grade, and has no past relevant work (Tr. 24, 159). The claimant alleges she has been unable to work since her amended alleged onset date of April 10, 2012, due to hydrocephaly and anxiety (Tr. 14, 158).

## Procedural History

On April 20, 2012, the claimant applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Edmund Wurre held an administrative hearing and determined the claimant was not disabled in a written decision dated July 16, 2014 (Tr. 14-25). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently andstand/walk/sit six hours in an eight-hour workday, but with no overhead reaching or more than frequent handling, fingering, or feeling with the right non-dominant upper extremity. He found that the claimant could

understand, remember, and carry out simple and some complex instructions consistent with semi-skilled work; that she was able to relate and interact with co-workers and supervisors on a work-related basis only, with no or minimal interaction with the general public; that she could adapt to a work situation with these limitations/restrictions; and that her medications would not preclude her from remaining reasonably alert to perform required functions presented in a work setting (Tr. 18). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work that she could perform, *e. g.*, small product assembler, bakery worker, bottling line attendant, and circuit board assembly (Tr. 25).

### Review

The claimant argues that the ALJ erred by improperly evaluating two consultative examiners' opinions, which would affect the jobs the ALJ identified. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of congenital hydrocephalus status post shunt, borderline intellectual functioning, posttraumatic stress disorder, and mood disorder (Tr. 16). The medical evidence as discussed below reflects that the claimant was evaluated by four consultative examiners, for both physical and mental impairments. Dr. Seth Nodine completed the first physical exam on November 14, 2012 (Tr. 232). Upon exam, he noted, *inter alia*, that the claimant had a 5/5 grip strength bilaterally, no focal neurologic deficits, no problems with fine motor dexterity including finger to nose and rapid hand movement, and no gait abnormality (Tr. 233). Additionally he noted that she could effectively opposed thumbs to fingertips, manipulate

small objects, and effectively grasp tools such as a hammer (Tr. 233, 237). He assessed her with hydrocephalus status post multiple revisions and shunt placements, and though it would require intermittent revision and medical care, she did not have any objective limitations on exam (Tr. 234).

On August 26, 2013, Dr. Ashok Kache examined the claimant (Tr. 259). Upon examination, he noted that she had moderate limitation of the lumbar spine range of motion at 70º of flexion, 10º extension, and 15º lateral bending to each side, with the rest within normal limits (Tr. 260, 262). Additionally, he noted she had problems getting up on her heels and toes, and had weakness in these muscle areas; was able to get on and off the exam table without difficulty; and could make a full fist, approximate fingertips, and pick up small objects and coins with extra time needed, but reported difficulty with shoelaces, buttons, zippers, and hooks (Tr. 260). He also stated that the claimant was generally weak in her handgrip as well as in her foot ankle dorsi and plantar flexion, her finger-to-nose coordination was slightly impaired, and Romberg's sign was mildly positive with eyes closed (Tr. 260). On the "Hand/Wrist Sheet," Dr. Kache indicated that the claimant could effectively oppose the thumb to the fingertips and manipulate small objects, but that she could not effectively grasp tools such as a hammer (Tr. 265).

On September 20, 2013, state reviewing physician Dr. Walter W. Bell determined that the claimant could perform the full range of light work (Tr. 252-258). He noted that her hydrocephalus was fully supported by the record, but that the x-ray of her lumbar spine was negative and there were no medical records reflecting reports of headaches, thus concluding that the claimant's reports were only partially credible (Tr. 258).

As to her mental impairments, the claimant initiated counseling on October 10, 2012, and on intake was assessed with PTSD and a global assessment of functioning (GAF) score of 62 (Tr. 198-214). Denise LaGrand, Psy.D., conducted a Mental Status Examination on October 29, 2012, at which time she assessed the clamant with borderline intellectual functioning with an estimated IQ of 70-79 (Tr. 224-227). Noting that the claimant's impairments appeared to be both mental and physical, she stated that the combination of mental and physical symptoms made her less likely to be successful in a job setting, but that her physical impairments were beyond the scope of the evaluation (Tr. 228). Dr. LaGrand assessed the claimant with PTSD and borderline functioning, along with a GAF of 50 (Tr. 228).

On July 24, 2013, Kenny Paris, Ph.D., conducted a second mental status examination (Tr. 239). He noted her reports of anxiety and depression, and observed that her affect and mood were consisted with reports of anxiety (Tr. 242). He assessed her with average intellectual functioning with an estimated IQ of 90-100, and diagnosed her with panic disorder with agoraphobia and mood disorder NOS, as well as a GAF of 50 (Tr. 243). He noted that her memory skills appeared to be somewhat impaired during exam but there were no problems with persistence and pace (Tr. 243). Like Dr. LaGrand, he noted her combination of physical and mental impairments, opining that it "makes her less likely to be successful in a job setting," and that her ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers is estimated to be below average (Tr. 243).

In his written opinion, the ALJ summarized the claimant's hearing testimony, then thoroughly summarized the evidence in the record (Tr. 19-24). The ALJ summarized Dr. Nodine's report and noted that that he had specifically indicated there were no objective findings to support any limitations, and that his report did not support limitations greater than the assessed RFC (Tr. 21). Turning, the Dr. Kache's opinion, the ALJ summarized his findings and stated, "[w]hile some limitations were identified on examination, these limitations do not support the alleged severity of the claimant's complaints [and] are not inconsistent with the manipulative limitations in the above [RFC]" (Tr. 22). The ALJ noted Dr. Bell's reviewing opinion, but found that the medical evidence indicated that an eroded light physical limitation was more appropriate (Tr. 23). As to her mental impairments, the ALJ noted the assessment of PTSD and borderline intellectual functioning, then stated the the GAF score assigned by Dr. LaGrand was a snapshot in time and very close to a finding of moderate symptoms, then stated that the reported limitations were not consistent with the other medical evidence or the claimant's own reports (Tr. 20). After summarizing Dr. Paris's opinion, the ALJ noted that the examination did not support the claimant's subjective complaints or her credibility, and further stated that "the below average ability to perform in most job situations, handle stress and interact with co-workers and supervisors, is not inconsistent with the limitations [in the RFC]" (Tr. 22).

The claimant argues that the ALJ erred in assessing the opinion evidence in this case in two ways. First, she argues that the ALJ erred in evaluating Dr. Kache's opinion, asserting that his finding of generally weak hand grip rendered her with a complete

inability to grasp or handle. Second, she asserts that the ALJ erred in evaluating Dr. Paris's statement regarding her below average ability to perform in most job situations and that the RFC therefore did not properly account for her below average ability to handle stress.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ adequately discussed and analyzed the opinions from Dr. Kache and Dr. Paris. As discussed the above, the ALJ discussed both opinions at length, noting any discrepancies with his assigned RFC and explaining his reasons for doing so.

The claimant has pointed to no evidence in the record to support a finding that the claimant's reduced grip strength rendered her unable to grasp or handle entirely, and the ALJ specifically address Dr. Paris's statement regarding her below average ability to perform in *most* (but not all) jobs.  Based on this analysis, the ALJ did not commit error in failing to include any additional limitations imposed by Dr. Kache and Dr. Paris in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant's final contention is that she cannot perform the jobs identified by the ALJ because she cannot perform the RFC assessed by the ALJ.  Here, the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination regarding her RFC.  This contention is therefore without merit.

Contrary to claimant's arguments, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC.  *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir.2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do.  *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for

that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**